**560**

The INDEPENDENT FEDERATION OF FLIGHT ATTENDANTS, an Unincorporated Labor Organization, Plaintiff,

v.

TRANS WORLD AIRLINES, INC., Defendant.

No. 86–6084–CV–SJ–6.

United States District Court, W.D. Missouri, St. Joseph Division.

June 21, 1989.

William A. Jolley and Doyle R. Pryor, Jolley, Walsh, Hager & Gordon, Kansas City, Mo., for plaintiff.

Murray Gartner, Proskauer Rose Goetz & Mendelsohn, New York City, Paul E. Donnelly, Stinson, Mag & Fizzell, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

SACHS, District Judge.

Pending before the court are plaintiff IFFA's motions to compel document production. Various issues must be resolved, including (1) whether the union has standing to litigate particularized backpay and other remedies for individual employees entitled to relief in the trainee controversy; (2) whether the union may expand discovery beyond the trainee issue, that is, persons who were still at the training school at the time of IFFA's offer to return to work; (3) what numbers of trainees are in issue; (4) whether litigation of the trainee remedial issue is premature, in that final disposition of all substantive questions as to striker reinstatement must occur before it is possible to reconstruct a final seniority list and determine interim rights; and (5) other procedural aspects of the document discovery controversy. These issues will be disposed of seriatim.

### (1) Standing of the Union

■ TWA contends that *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and particularly its application in *BRC v. Delpro Co.,* 549 F.Supp. 780 (D.Del.1982), establish that a union in a Railway Labor Act controversy has no standing to pursue individualized damage claims of persons represented by it, even where there have been violations of the Railway Labor Act which authorize injunctive relief. IFFA contends that an analogy to the remedies of the National Labor Relations Act establishes that individual employees are not proper parties or exclusive parties in proceedings seeking backpay relief and other individualized relief where unfair labor practices have been charged and established. IFFA further contends that NLRA principles have been applied in the RLA context in cases such as *National Airlines, Inc. v. IAM,* 478 F.2d 1062 (5th Cir.1973), holding that a RLA union has exclusive authority to settle the rights of individuals (such as backpay) where there is a major dispute or other violation of rights under the Act (as distinguished from contract rights or grievances). The right to settle implies the right to sue, according to IFFA. *See Union of Professional Airmen v. Alaska Aeronautical Industries, Inc.,* 95 LRRM 2867 (D.Alaska 1977).

With due respect, I disagree with the *Delpro* decision, which seems to have no supplemental supporting rulings, and agree with the Alaska decision and the implications of *National Airlines.* Nothing Judge Tuttle wrote in *National Airlines* has, in my judgment, been superseded by *Warth v. Seldin. Warth* simply deals with what may be referred to as federal common law, and holds that a voluntary association cannot pursue all damage claims of its members for any legal controversies they may have in common. 422 U.S. at 514–516, 95 S.Ct. at 2213–2214. The Eighth Circuit has ruled, consistently with *Warth,* that there is no reason to confer on unions the right to pursue Miller Act violations on behalf of its members. *United States ex rel. UBC v. Woerfel Corp.,* 545 F.2d 1148 (8th Cir.1976). To the same effect *see American Federation of Railroad Police v. National Railroad Passenger Corp.,* 832 F.2d 14, 16 (2d Cir.1987), barring collection of damages for individual members in a safety situation.

The *Professional Airmen* case, recognizing union authority to seek individualized relief, including damages, for violation of the RLA, is by no means an eccentric fluke. *See e.g., Empresa Ecuatoriana de Aviacion v. District Lodge No. 100,* 690 F.2d 838, 846–7 (11th Cir.1982). It has been cited by Chief Judge Waters in an opinion reluctantly assuming jurisdiction in a related case, in which the union and the individual employee were joined as plaintiffs. *ALPA v. Scheduled Skyways, Inc.,* 567 F.Supp. 171, 181 (W.D.Ark.1983). I see nothing to suggest that *National Airlines* was undercut by *Warth.* On the contrary, it is *Delpro* that appears to make an unsound application of *Warth* where the labor laws are quite inconsistent with the individualistic approach of that case. *Warth* itself notes the power of Congress to confer special standing when public policy concerns so dictate. *See* 422 U.S. at 500–1, 95 S.Ct. at 2205–06. It would be particularly inappropriate to draw the line, as TWA would, between injunctive relief against violations of the RLA and the power in the plaintiff union to obtain complete individualized relief, whether reinstatement, special seniority placement, or compensatory damages.

It seems conceded by the present parties that the court's remaining jurisdiction is equitable in nature and that backpay is simply an incident to the other authorized relief.

IFFA's standing to seek individual monetary relief is clear and doubtless exclusive. I therefore rule against the contrary, *Delpro* based argument here (and will, when appropriate, in the flight service managers' controversy).

### (2) Additional Late Flyers

■ IFFA contends that it has discovered additional late flyers, not just the training school group dealt with in summary judgment, who did not fly commercially during the strike but are nevertheless be-

ing treated as permanent replacements for full-term strikers. IFFA seeks discovery as to a group of 119 individuals (Jolley letter of May 11, 1988, attached to Doc. 86, 1988 Motion to Compel). As best I can determine, this group of "mystery flyers" includes some 77 flight attendants who had completed training before May 18 (and were therefore not targeted in the trainee litigation) but whose initial "OPE flights" (commercial flights as distinguished from training flights?) occurred on May 18, 19 and 20, 1986. Suggestions in Opposition, p. 7, Doc. 4. This representation by TWA leaves others not accounted for; however, it illustrates the problem.

Perhaps there is a good argument for displacing these additional late flyers, whatever their number and whatever the underlying facts may be. These people were not the subject of the summary judgment ruling in 1986 and were necessarily outside the affirmance of the Court of Appeals, now finalized in the Supreme Court and ready for enforcement. It is too late to reopen liability issues (and it may be too late to amend the pleadings in one of the pending cases to target additional persons who should fairly be treated as analogous to the in-school trainee group—no request to amend the pleadings having been made[1]). Discovery as to individuals whose rights have not been litigated would be inappropriate at the remedial stage of the initial trainee group controversy. Discovery as to the 119 persons listed in the Jolley letter will therefore be denied, assuming it is conceded they do not fall within the group of persons enrolled in the training school at the time of IFFA's offer to return to work, which was the subject matter of the litigation. Para. 24, First Amended Complaint, filed June 24, 1986; Stip. No. 23 ("approximately 463 had not completed initial flight attendant training at TWTC as of May 17, 1986").

---

1. A year has passed since I expressed skepticism about whether the rights of the 119 had been determined on the record then existing. Doc. 87.

2. It is possible that TWA could establish as a remedial matter that some or all of the 36

Discovery will be limited to persons who "had not completed initial flight attendant training at TWTC as of May 17, 1986."

### (3) The Numbers in Issue

■ TWA contends that although this court and the Court of Appeals understood that we were dealing with approximately 463 trainees the number in issue should be reduced to 401. To the extent TWA would delete persons who were in training school at the time of the offer to return, it would appear that the violation of the Railway Labor Act occurred in using such persons to impede rehiring. Therefore, subsequent events such as quitting or not qualifying would probably not affect the initial violation.[2] As to some 24 persons who are identified by TWA as in training school at the time the strike ended but had previously worked commercially in TWA flights, such a factual situation was not presented to the court previously. The concept that people in training school were not *fully* qualified and should not have been qualified after IFFA's offer to return seems controlling. Such persons should probably have been subject to bumping. In any event discovery should proceed as to the entire group of 461.

### (4) Prematurity Argument

I reject the prematurity argument, at least as it relates to the violation that was first in time, which appears to be the trainee violation. It is possible that a second violation, on the FSM issue, for example, would also impact on the same person. That would simply mean that supplemental relief might be available to that person. Each violation should be explored to offer remedy for that particular violation to any person who may have been injured (assuming the parties do not take a more practical approach, as in *National Airlines*, and negotiate a formula or other settlement meth-

---

persons who were in school but never qualified were not considered in limiting the rehiring of full-term strikers. This remains to be further considered; it should not cut off discovery as to such persons.

od that might avoid individualized litigation).

(5) Other Procedural Problems

It is not clear to me that TWA has denied discovery as to the 461 persons in training school at the time of IFFA's offer to return (omitting the one person who is a subject of arbitration). If TWA is in fact denying requested documentation as to said persons, however, the 1988 request for documents will be granted as to such persons, but denied as to persons not in training school. Paragraph 3 of the request will be denied as a trainee issue request. IFFA may have rights as union representative to this information, but that is not the present subject.

■ As to 1989 discovery, TWA argues that a proper Rule 34 request has not been made. Given the resistance of TWA to any discovery, based on the claims rejected here, a request in better form would have been futile. Treating the request as a proper one, the request will be granted.

■ Sanctions are prematurely requested. There was good reason to advance the contentions made by TWA, and the case most squarely in point (*Delpro*) supports TWA. An order has not been violated. It is my assumption, however, that the parties will resume their prior practice of resolving discovery requests reasonably and without court involvement. Particular problems may be raised by conference telephone call rather than protracted motion practice if it becomes necessary to seek guidance.

The suggestion of a Special Master seems premature and deserves more careful attention if a considerable number of individual and differing claims must be resolved. The Western District Magistrates do not have time to assume additional major litigation.

It is therefore ORDERED that TWA promptly produce documents requested by IFFA in ¶¶ 1 and 2 of its 1988 request; that the request contained in ¶ 3 is DENIED; and that the documents requested in 1989 be promptly produced.