**Saul ZAPATA, et al., Plaintiffs,**

v.

**IBP, INC., Defendant.**

**No. 93–2366–EEO.**

United States District Court, D. Kansas.

May 15, 1996.

John L. Hampton, David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, P. John Brady, R. Lawrence Ward, Shughart, Thomson & Kilroy, Kansas City, MO, for Saul Zapata, Juan Rucker.

John L. Hampton, David W. Hauber, Glenn B. Brown, Boddington & Brown, Chtd., Kansas City, KS, P. John Brady, R. Lawrence Ward, Shughart, Thompson & Kilroy, Kansas City, MO, for Gustavo Adolfo Vasquez, Francisco Ponce, Antonio Martinez, Manuel Sigala, Graciela Garcia, Antonio Ponce, Enrique Molina, Jr., Baltazar Betran, Pedro Lira, Marco Interial, Jose Luis Velasquez, Olga Cabral.

Jack L. Whitacre, Spencer, Fane, Britt & Browne, Kansas City, MO, J. Nick Badgerow, Michaela M. Warden, Spencer, Fane, Britt & Browne, Overland Park, KS, Russell P. Wright, Dakota City, KS, for IBP, Inc.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on the motion of plaintiffs for class certification (Doc. # 183). Plaintiffs seek certification of their complaint as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). Defendant, IBP, Inc. ("IBP"), opposes class certification. The parties have briefed the certification motion, and on December 15, 1995, the court conducted a hearing on the motion. For the reasons set forth below, plaintiffs' motion for class certification as to the first proposed class will be denied. Plaintiffs' motion for class certification with respect to the second proposed class will be denied.

### I. Factual Background

The plaintiffs are fourteen present and former production line workers of IBP's Emporia and Finney County, Kansas, beef processing plants. In their first amended complaint and in their briefs in support of the motion for certification, plaintiffs allege that IBP maintains a pattern and practice of discrimination against Mexican and Mexican–Americans in the following respects:

(1) IBP intimidates Mexican and Mexican–American employees with verbal and psychological abuse by calling them offensive names; (2) IBP denies Mexican and Mexican–American employees basic rights and privileges enjoyed by non-Hispanic employees; (3) IBP keeps Mexican and Mexican–American employees uninformed of their rights; and (4) IBP has not implemented any legitimate policies or procedures to prevent the discriminatory conduct of its employees, particularly management employees. In addition, IBP assigns Mexican and Mexican–American employees to the most dangerous and least desirable jobs in the plant.

Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Class Certification, at 14.

At the hearing, plaintiffs clarified that they are now proceeding solely under a theory of

intentional discrimination based on disparate treatment, not disparate impact. Plaintiffs also indicated that they are no longer suing over discrimination as to promotion and transfer opportunities, but are limiting the second proposed class to discrimination regarding initial job assignments.

Both the Emporia and Finney County plants contain slaughter, processing, and hides divisions. Additional facts will be developed as they become relevant to the various issues.

## II. *Discussion*

Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), the plaintiffs seek to certify and represent two classes of individuals. In plaintiffs' Supplemental Suggestions in Support of Class Certification, plaintiffs define the two classes. Plaintiffs refer to the first class as "The Hostile Work Environment Class," and define it as follows:

All past, current and future hourly, non-salaried workers of Mexican ethnicity or ancestry (including Mexicans and Mexican–Americans) who have or will have worked at IBP, Inc.'s Finney County, Kansas or Emporia, Kansas beef processing plants at any time since November 21, 1991 and who have or will have been subjected to a hostile or abusive work environment because of their ethnicity or ancestry in violation of the Civil Rights Act of 1966, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

Plaintiffs designate the second class as "The Initial Job Assignment Class," which consists of:

All past, current and future hourly, non-salaried workers of Mexican ethnicity or ancestry (including Mexicans and Mexican–Americans) who have or will have worked at IBP, Inc.'s Finney County, Kansas or Emporia, Kansas beef processing plants at any time since September 3, 1991 and who have or will have been discriminated against in their initial job assignments because of their ethnicity or ancestry in violation of the Civil Rights Act of 1966, 42 U.S.C. § 1981, and Title VII of

the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

■ Certification under Rule 23 involves two steps. First, the proposed class action must satisfy the four requirements of subsection (a) of Rule 23, which provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These prerequisites for maintenance of a class action are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *In re United Telecommunications, Inc. Securities Litigation,* Civ.A. No. 90–2251–0, 1992 WL 309884, at *1 (D.Kan. September 15, 1992); *Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665, 674 (D.Kan.1989).

■ "A party seeking to certify a class is required to show 'under a strict burden of proof, that all the requirements of [Fed. R.Civ.P.] 23(a) are clearly met.'" *Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir.1988) (citing *Rex v. Owens ex rel. State of Oklahoma,* 585 F.2d 432, 435 (10th Cir.1978) (citations omitted)). *See also General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982) ("[A] Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.").

If the requirements of Rule 23, subsection (a) are met, then the action must further qualify for one of the three categories in subsection (b). *Smith,* 124 F.R.D. at 674. In this case, plaintiffs contend that the present action qualifies for class action treatment under Rule 23(b)(2) and 23(b)(3). Specifically, plaintiffs assert that their claims for equitable relief with respect to both proposed classes warrant class treatment pursuant to Rule 23(b)(2), and that their claims for com-

pensatory and punitive damages should be certified under Rule 23(b)(3).

Rule 23, subsections (b)(2) and (b)(3) provide as follows:

An action may be maintained as a class action if ...

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

■■■ The determination of class certification is committed to the broad discretion of the trial court. *Heartland Communications, Inc. v. Sprint Corp.,* 161 F.R.D. 111, 114 (D.Kan.1995) (citing *Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir. 1982)). The decision necessarily entails weighing the practical and prudential considerations, "most of which are purely factual or fact-intensive." *Reed,* 849 F.2d at 1309 (citation omitted). The propriety of a class action depends on the facts of each case, and there is no error if the proper criteria are applied to the facts. *Id.* In applying the prerequisites and conditions set forth in Rule 23 for the purposes of determining whether to grant class action status, the trial court may apply "realism and good sense," and take into consideration procedural fairness. *Wilcox v. Commerce Bk.,* 474 F.2d 336, 347 (10th Cir.1973).

The Tenth Circuit has stated, "if there is error to be made, let it be made in favor and not against the maintenance of the class action." *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). However, this statement is not to be read to unduly limit the discretion of the trial judge in deciding whether to certify a class because discretion may well be the "key to a realistic administration of Rule 23, particularly with respect to a determination of the most fair and efficient procedure." *Wilcox,* 474 F.2d at 344.

■■■ In determining whether a class should be certified, the court must not delve into the merits of the action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). At the same time, the court may probe beyond the pleadings and consider the range of proof necessary to maintain the allegations of class-wide discrimination. *Stambaugh v. Kansas Dept. of Corrections,* 151 F.R.D. 664 (D.Kan.1993). *See also Smith,* 124 F.R.D. at 674 ("the court often must, to some extent, analyze the elements of the claims and defenses of the parties.") (citation omitted).

■■■ The class definition is "of critical importance because it identifies the persons (1) entitled to relief, (2) bound by the judgment, and (3) entitled to notice in a Rule 23(b)(3) action." Manual for Complex Litigation, Third § 30.14 (1995); *see also McHan v. Grandbouche,* 99 F.R.D. 260, 265 (D.Kan. 1983). Greater precision is required in defining a class when compensatory relief is sought, rather than injunctive or declaratory relief. *McHan,* 99 F.R.D. at 265.

Local rules impose additional requirements on motions for class certification. District of Kansas Rule 23.1(a)(2)(A) requires the definition of the proposed class to be included in the complaint. D.Kan. Rule 23.1(d) places the burden of proof on the party seeking certification to "present an evidentiary basis to the court showing that the action is properly maintainable as such."

A. *The "Hostile Work Environment" Class*

 As a threshold matter, IBP asserts that the EEOC charge filed by plaintiff Manuel Sigala does not encompass all the forms of discrimination as to terms and conditions of employment that plaintiffs now allege in their complaint. To proceed as a class action, class claims must be "fairly encompassed" in the named plaintiff's claims. Sigala, in his EEOC charge, stated that IBP discriminated against him in the following manner: "I was called a lazy Mexican and a wet back and terminated because of my national origin, Mexican." Plaintiff's Exhibit 4. IBP argues that plaintiffs' various additional allegations of disparate treatment, such as denial of bathroom breaks, equipment, interpreters, and medical treatment are beyond the scope of the Sigala charge.

 "Allegations in a judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission....'" *Scott v. City of Overland Park,* 595 F.Supp. 520, 526 (D.Kan.1984) (quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir.1970)). *See also Pitre v. Western Elec. Co., Inc.,* 975 F.2d 700, 706 (10th Cir.1992), *cert. denied,* 510 U.S. 972, 114 S.Ct. 459, 126 L.Ed.2d 391 (1992) (recognizing "generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge.") (citations omitted). "In other words, the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Scott,* 595 F.Supp. at 526 (quoting *Sanchez,* 431 F.2d at 466).

IBP correctly points out that other terms and conditions of Sigala's employment are not described in the EEOC charge as additional forms of discrimination. We conclude, however, that it would be reasonable to expect the scope of the EEOC investigation to include inquiry into other possible discriminatory terms and conditions of employment. *See, e.g., Smith v. Sentry Insurance,* 674 F.Supp. 1459, 1468 (N.D.Ga.1987) (the question of retaliatory discharge should have been encompassed in a reasonable investigation of plaintiff's EEOC charge.)

1. *Rule 23(a) Requirements*

*Numerosity and the Impracticability of Joinder*

 To establish numerosity under Federal Rule of Civil Procedure 23(a), the class must be of such a size that "joinder of all members is impracticable." "'Impracticable does not mean impossible.'" *Stambaugh,* 151 F.R.D. at 673 (quoting *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993)). To obtain certification, plaintiffs are not required to prove the identity of each class member or the specific number of members. *Id.* The court may properly rely on reasonable estimates of the number of members in the proposed class. *Rex v. Owens ex rel. Oklahoma,* 585 F.2d 432, 436 (10th Cir.1978). Besides size, other factors relevant to the practicality of joinder include: the practical viability of individual suits in terms of inconvenience, inefficiency and the size of the individual claims, requests for injunctive or declaratory relief, and the location and distribution of class members. *Stambaugh,* 151 F.R.D. at 673.

 Plaintiffs represent that the hostile work environment class contains at least 5,000, and perhaps as many as 7,000, current and former employees of IBP's Emporia and Finney County, Kansas, beef processing plants. We find that these numbers alone are sufficient to justify a finding of numerosity. Additionally, we find that joinder of all potential class members would be impracticable in this case.

*Commonality*

 Commonality requires the individual's claims and the class claims to have common questions of law or fact.[1] This Rule

---

1. Commonality and typicality "tend to merge," with both serving "as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the

23(a)(2) requirement is "substantially less rigorous than Rule 23(b)(3)." *Sunbird Air Servs. v. Beech Aircraft Corp.*, No. 89–2181, 1992 WL 193661, at *3 (D.Kan. July 15, 1992). The inquiry under Federal Rule of Civil Procedure 23(a)(2) is not whether common questions of law or fact predominate, but only whether such questions exist. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988). *See generally* 7A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 1763 (2d ed.1986).

■ A showing of commonality, along with typicality, bridges the gap from an individual claim to an existing class consisting of the representatives and other members having the same interests and the same or similar injuries. *Falcon*, 457 U.S. at 156, 102 S.Ct. at 2369–70. Though acknowledging that Title VII discrimination is "by definition" class-based, the Supreme Court in *Falcon* reasoned that the mere "allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified." *Id.* at 157, 102 S.Ct. at 2370–71. The court explained its conclusion in the following manner:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.
>
> For respondent to bridge that gap, he must prove much more than the validity of his own claim.

*Id.* at 157–58, 102 S.Ct. at 2370–71.

■ "With *Falcon* the Supreme Court has pulled in the reins on across-the-board

attacks. Conclusory allegations of discrimination on a class-basis are not enough." *Stambaugh*, 151 F.R.D. at 672. Post–*Falcon*, courts now require detailed allegations, affidavits and other evidence to determine if the individual claims share questions of law or fact with the class claims, and if the individual claims are typical of those brought for the class. *Id.* (citing 5 Herbert B. Newberg, *Newberg on Class Actions* § 24.13, at 24–52—24–54 (3rd ed.1992)). "Plaintiffs cannot 'simply leap from the premise that they were the victims of discrimination to the position that others must also have been.'" *Gonzalez v. Brady*, 136 F.R.D. 329, 331 (D.D.C.1991) (quoting *Morrison v. Booth*, 763 F.2d 1366, 1371 (11th Cir.1985)).

■ In the instant case, the court must determine whether the plaintiffs have shown that a class of Mexican and Mexican–American production line workers were aggrieved by the same hostile work environment advanced by the plaintiffs in their individual claims. A leading treatise summarizes the relevant considerations:

> After *General Telephone Co. v. Falcon*, allegations alone of a pattern and practice of discrimination, as well as a conclusory finding of satisfaction by the court, are inadequate to satisfy the commonality requirement. What is necessary is a specific showing of underlying facts which might raise an inference of a common question of pattern and practice through allegations of specific incidents of discrimination, supporting affidavits, or evidence at the class certification hearing. Pleadings should be factual and specific.

5 Herbert B. Newberg, *Newberg on Class Actions* § 24.21, at 24–89–95 (3rd ed.1992).

Here, as in *Stambaugh*, we conclude that plaintiffs have not "bridged the *Falcon* gap." While plaintiffs have presented the affidavits of thirty-four present and former Mexican and Mexican–American employees of IBP's Kansas plants, who allege they were subjected to a hostile work environment and who are not named plaintiffs, we are of the view that these affidavits only point up the highly

class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at

157 n. 13, 102 S.Ct. at 2370 n. 13.

individualized nature of their respective claims. IBP's allegedly discriminatory conduct did not affect all members of the putative class in a similar fashion. Each of the affidavits alleges a different combination of ways "IBP or its managers and supervisors have discriminated against" an individual. IBP's Appendix D, Exhibit 17.

Moreover, the court finds that, in this particular case, the majority of the particular work conditions that plaintiffs claim constitute hostile work environment discrimination focus upon the individual actions taken by different individual supervisors, and not on a uniform policy or practice of IBP. Plaintiffs contend that the following work conditions constitute a hostile work environment: denial of restroom breaks, denial of requests to use the infirmary, denial of proper equipment, racial remarks or epithets, failure to provide interpreters, and failure to publish work rules and other employment information in Spanish.

■■■■■ IBP argues that the putative class fails to meet the commonality requirement inasmuch as plaintiffs have not presented any evidence of centralized employment decisionmaking. We agree. 5 *Newberg on Class Actions* § 24.21, at 24–95, provides us with the following guidance:

> Factual disparities within the class will not bar certification when there are supported allegations of a pervasive policy of discrimination, unless the factual situation of the representative plaintiff is particularly unique. Conversely, an absence of supported allegations by the plaintiff of centralized employment decisionmaking or a showing of decentralization by the defendant may result in a denial or reversal of class certification.

*See also Jamerson v. Bd. of Trustees,* 80 F.R.D. 744 (D.Ala.1978), *aff'd,* 662 F.2d 320 (5th Cir.1981) (plaintiff failed to satisfy the commonality requirement when it was shown that the challenged employment decisions were not made on a broad institutionalized basis).

The majority of the conditions that plaintiffs allege constitute hostile work environment discrimination (*i.e.,* the use of racial epithets, refusal to allow bathroom breaks,

denial of proper equipment, and denial of requests to visit the infirmary) are based on the decentralized, individual conduct of various individual supervisors. IBP notes that plaintiffs have not introduced any evidence purporting to show that the alleged harassment was practiced by each and every supervisor. While we do not believe plaintiffs are required to show that "each and every supervisor" engaged in hostile work environment discrimination, notably, plaintiffs have failed to demonstrate that IBP had in place a specific, company-wide policy fostering or condoning such treatment.

We further find that although a few of plaintiffs' allegations of hostile environment may arise from centralized employment decisionmaking, such as the failure to publish work rules and other employment information in Spanish, these claims are overshadowed by the other, individualized, actions. Moreover, this aspect of plaintiffs' hostile work environment claim (*i.e.,* rules posted in English) seems to support a disparate impact theory, which plaintiffs have abandoned, rather than an intentional disparate treatment claim. Consequently, we conclude that the majority of the working conditions of which plaintiffs complain result from decentralized employment decision making, and thus are insufficient to satisfy the commonality requirement.

■■■ Finally, we address IBP's argument regarding the applicability of section 1981 to the named plaintiffs alleging "hostile work environment" discrimination. Prior to November 21, 1991, the effective date of the Civil Rights Act of 1991, section 1981 only applied to hiring and certain "new contract" promotion claims. *Patterson v. McLean Credit Union,* 491 U.S. 164, 179, 109 S.Ct. 2363, 2373–74, 105 L.Ed.2d 132. As such, section 1981 does not apply to "postformation conduct by the employer relating to the terms and conditions of continuing employment," including the imposition of discriminatory working conditions. *Id. Patterson* held that racial harassment during the course of employment was not actionable under section 1981. *Id.* at 178, 109 S.Ct. at 2373. The Civil Rights Act of 1991, effective November

21, 1991, amended section 1981 to encompass enjoyment of all benefits of a contractual relationship. The amendment, however, was not retroactive. *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, —— – ——, 114 S.Ct. 1510, 1519–20, 128 L.Ed.2d 274 (1994).

IBP asserts that the vast majority of all named plaintiffs were hired by IBP before November 21, 1991. Thus, their hostile work environment claims are only encompassed by section 1981 as it existed prior to November 21, 1991. Consequently, the majority of the named plaintiffs are unable to allege the same claim for hostile work environment discrimination under section 1981, as are members of the putative class hired after November 21, 1991.

We agree, and conclude that such analysis only further demonstrates a lack of commonality between the representative plaintiffs and the putative plaintiff class. It appears that no common question of law exists where, as here, the majority of the named plaintiffs are unable to bring the same section 1981 claim and seek the same relief as those members of the plaintiff class hired after November 21, 1991.

### *Typicality*

Rule 23(a)(3) requires that the claims of the class representative must be typical of those of the putative class. "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." 1 *Newberg on Class Actions* § 3.13, at 3–76. Claims do not have to be identical to be typical. *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988); *Olenhouse v. Commodity Credit Corp.,* 136 F.R.D. 672, 679 (D.Kan.1991). A plaintiff's claim may differ factually and still be typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." 1 *Newberg on Class Actions* § 3.13, at 3–76; *Adamson,* 855 F.2d at 676.

As with commonality, there is a "wide gap" between proof of an individual claim of discrimination and proof of typicality. *Falcon,* 457 U.S. at 157. Certification is permitted only upon specific allegations or evidence showing either that a class exists with similar grievances, or that a company-wide policy or practice of discrimination exists. 5 *Newberg on Class Actions* § 24.26, at 24–106—24–108. Demonstrating typicality is not an onerous burden, but requires more than conclusory allegations that unnamed class members suffered discrimination. *Paxton v. Union Nat. Bank,* 688 F.2d 552, 559 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983).

Much of what we said with respect to our commonality analysis also applies to our discussion of typicality, for commonality and typicality "tend to merge." *Falcon,* 457 U.S. at 157, 102 S.Ct. at 2370. Plaintiffs' affidavits in Exhibit 17 only demonstrate individualized claims of hostile work environment discrimination at the Emporia and Finney County plants. Plaintiffs do not present any specific allegations, supported by evidence, that a company-wide policy or practice of hostile work environment discrimination exists. Plaintiffs' conclusory allegations are simply insufficient to satisfy the typicality requirement.

Further, we find the named plaintiffs are not typical of the class, inasmuch as the claims asserted by the majority of the named plaintiffs cannot be based on the same legal theory as the rest of the putative class, to-wit, violation of section 1981, as amended by the Civil Rights Act of 1991.

### *Adequacy of Representation*

Rule 23(a)(4) requires the class representatives to be in a position to protect fairly and adequately the interests of the class. Courts have broken down the requirement into an evaluation of (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation. *See Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370–

71 n. 13; *Smith,* 124 F.R.D. at 676. We must give particular concern to the adequacy of representation, because inadequate representation would implicate the due process rights of absentee class members bound by the final judgment in the class suit. *Key v. Gillette Co.,* 782 F.2d 5, 7 (1st Cir.1986). *See also Eisen,* 391 F.2d at 562–63.

 In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the action on behalf of the class. IBP has raised no issue with respect to the ability of class counsel to conduct the litigation, and we have no concerns about their adequacy. Accordingly, we find plaintiffs have met the first factor in establishing adequacy of representation.

IBP, however, contends that plaintiffs fail to satisfy the second factor, and argues that an intra-class conflict exists between the Mexican and Mexican–American class members. Specifically, IBP presents the testimony of Lira, one of the named plaintiffs, who stated that the Mexican–Americans born in the United States "think they're superior" to those born in Mexico. IBP also asserts that Caucasian supervisors treated Mexican–American workers differently from Mexican workers. Finally, IBP claims that "[m]any of the supervisors ... were 'Chicanos' or Mexican–Americans and, thus, are members of the proposed Hispanic classes as defined by plaintiffs...." IBP's Memorandum in Opposition, at 59.

 The court finds Lira's testimony constitutes slim evidence of a conflict among class members. Simply because a number of Mexican–American workers may harbor animosity towards Mexican workers is not clear evidence that their interests or claims in the case are antagonistic: indeed, both groups are claiming that they were discriminated against because of their Mexican ethnicity or ancestry. "[S]peculation concerning conflict that might develop between the representative plaintiffs and the class members does not sustain a finding that the representative is unable to prosecute a claim vigorously." 5 *Newberg on Class Actions* § 24.34, at 24–144. In addition, IBP presents no evidence in support of its assertion that supervisors accorded treatment to Mexican workers that differed from the treatment they gave Mexican–American workers. The portion of plaintiff Rucker's deposition provided to the court does not confirm such an assertion.

 However, in probing beyond the pleadings and considering the range of proof necessary to maintain the allegations of class-wide discrimination as we are permitted to do, *Stambaugh,* 151 F.R.D. at 671, the court has concerns regarding the named plaintiffs' ability to adequately represent the class. To prove discrimination under Title VII for hostile work environment, a plaintiff must satisfy both an objective and a subjective standard. *See Trent v. Cessna Aircraft Co.,* CIV.A. No. 93–1239–MLB, 1995 WL 101323, *15 (D.Kan. Jan. 20, 1995). Given the wide divergence in the types of actions that plaintiffs claim constitute hostile work environment, and the large number of potential class members, the court has great difficulty in finding, on the present record, that the named plaintiffs' subjective assessment of their alleged hostile work environment discrimination would sufficiently coincide with prospective class members so as not to run afoul of due process, in binding absentee class members to any final judgment. *See Key,* 782 F.2d at 7. On balance, the adequacy of representation requirement seems to weigh against certification.

In sum, after engaging in "a rigorous analysis," the court finds that plaintiffs have not met their strict burden under Rule 23(a) of satisfying all four requirements with respect to the first proposed class. However, even if we were to find that plaintiff had met all the requirements of class certification under Rule 23(a), we would still conclude that class certification is inappropriate: plaintiffs have failed to demonstrate that the action qualifies for certification under any one of the three categories in subsection (b). We now turn to a discussion of the Rule 23(b) requirements.

### 2. Rule 23(b) Requirements

#### (a) Rule 23(b)(2)

Plaintiffs maintain that, as to their claims of injunctive relief, they have met the re-

quirements of Rule 23(b)(2) certification. We find that the approach used by the trial judge in *Boughton v. Cotter Corporation*, 65 F.3d 823, 827 (10th Cir.1995), as discussed and approved therein, is also fitting here. There, the trial judge considered and rejected certification under Rule 23(b)(2), reasoning: "[w]hile plaintiffs' claims relating to medical monitoring, if brought by themselves, might constitute a proper basis for certifying this suit under Rule 23(b)(2), certification is not proper here. The relief sought is primarily money damages...." The Tenth Circuit, in reviewing this ruling, stated:

> The trial judge understood that injunctive relief was requested and that certification of a class under such circumstances was legally permissible under Rule 23(b)(2), but nevertheless decided that it was not appropriate to certify a class under that rule where the relief sought was primarily money damages. Refusal to certify for that reason was not an abuse of the trial court's discretion.

*Id.* at 827.

Similarly, in the instant case, we find that plaintiffs' claims are primarily for money damages. At the hearing, the court inquired of plaintiffs' counsel why injunctive relief for the named individual plaintiffs would not provide adequate relief for the putative class. In response, plaintiffs' counsel answered that injunctive relief would not suffice because it would not provide a remedy to those IBP workers who had left employment at IBP as a result of their discriminatory treatment. Plaintiffs' counsel asserted that the only relief that could compensate those former IBP employees would be money damages.

■ Thus, because plaintiffs are primarily seeking money damages, we choose to consider this action under Rule 23(b)(3). *See, e.g., McHan v. Grandbouche*, 99 F.R.D. 260, 266 (D.Kan.1983). *See also* 3B Moore's Federal Practice ¶ 23.40[4], pp. 23–278–81 ("Many cases have stated the principle that

(b)(2) was not intended to apply where the primary claim is for damages, but is applicable only where the relief sought is exclusively or predominately injunctive or declaratory.... Accordingly, it is possible for a court to treat a mixed action exclusively under (b)(3), ..."); Fed.R.Civ.P. 23 advisory committee's note to 1966 amendment ("[S]ubdivision [ (b)(2) ] does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."). We therefore turn to subdivision (b)(3) to determine if class certification should be allowed in this case.[2]

### (b) *Rule 23(b)(3)*

■ Rule 23(b)(3) provides that an action may be maintained as a class action if, in addition to meeting the prerequisites of subdivision (a) of Rule 23, the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R.Civ.P. 23(b)(3). The two basic requirements of Rule 23(b)(3) are generally referred to as predominance and superiority. Both prongs of this rule must be met for a plaintiff to fulfill the requirements of Rule 23(b)(3). As discussed below, the court concludes that, as to the first class definition, the requirements of Rule 23(b)(3) are not met in this case.

### *Superiority*

Rule 23(b)(3) requires that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." The Tenth Circuit has expressly held that it is sufficient for a trial court to deny class action status under Rule 23(b)(3) solely upon a determination that the class action procedure is not superior to other procedures, if an adequate record exists and good reasons are stated. *Wilcox v. Commerce Bank*, 474 F.2d 336, 345 (10th Cir.

---

**2.** Plaintiffs' reliance on *Adams v. Pinole Point Steel Company*, 1994 WL 515347 (N.D.Cal.1994) is unpersuasive, inasmuch as the court there summarily concluded that class certification would proceed pursuant to Rule 23(b)(2) and

(b)(3). Moreover, while a court may choose to certify under both (b)(2) and (b)(3), the foregoing authorities indicate that it is within a court's discretion to treat a mixed action exclusively under (b)(3).

1973). Under such circumstances, it is not necessary for the court to engage in an analysis of whether common issues of fact or law predominate. *Id.*

■■■■■ We have given due consideration to the four factors listed in subdivision (b)(3)(A), (B), (C), and (D)[3] of Rule 23, and have determined that a class action is not superior to other methods of adjudicating this controversy. While there may be some validity to plaintiffs' argument that a number of class members might not bring separate suits, still the fact remains that individual plaintiffs have brought suit against IBP in the past, alleging employment discrimination pursuant to 42 U.S.C. § 1981 and/or Title VII. *See, e.g., Garza v. IBP, Inc.,* No. CIV.A. 86–4292, 1987 U.S.Dist. LEXIS 12601 (D.Kan. Dec. 15, 1987) (alleging discrimination under both 42 U.S.C. § 1981 and Title VII); *Nunez v. IBP, Inc.,* 163 F.R.D. 356 (D.Kan.1995) (alleging discrimination under Title VII). In addition, Title VII provides for the allowance of attorneys' fees, which is strong incentive for attorneys to bring suit on behalf of individual plaintiffs. *See* 42 U.S.C. § 2000e–5(k). With the passage of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, attorneys' fees for the prevailing party are also clearly recoverable in a suit brought under 42 U.S.C. § 1981.

The court also finds that manageability problems exist with respect to calculating the compensatory damages plaintiffs claim. Courts have held that claims for compensatory damages unique to each individual greatly complicate management of a class. *See, e.g., Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 928–29 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982) ("Unlike back pay, compensatory damages are not subsumed by the traditional equitable concepts of reinstatement and restitution. More importantly, establishing the amount of compensatory damages due each plaintiff is a far more complex and uncertain exercise than the determination of back pay, and

greatly complicates the management of the class action."). In response to interrogatories, plaintiffs stated that they each were claiming $500,000 in compensatory psychiatric damages. As plaintiff noted at the hearing, an award of compensatory damages may include recovery for stress-related, psychological, and emotional injuries.

Plaintiffs assert that such damages could be calculated through the use of a survey. As IBP aptly pointed out at the hearing, it would be exceedingly difficult to calculate, with any accuracy, the psychological damages each plaintiff incurred as a proximate result of a hostile work environment at IBP; such inquiry would necessarily require an individual, subjective analysis:

> Each individual is going to have to show what happened to him or her in order to recover psychiatric compensatory damages. And that is inherently subjective. You cannot randomly sample for what happened in someone's mind and ... have a sociologist or psychologist come in and generalize that when people are placed in this situation, they must feel this way, and ... somehow ... extrapolate to some number from that, it's all subjective in the eye of the beholder and it can only be determined in that way.
>
> . . . .
>
> [H]ow can you ask in a survey the subjective stress related psychological questions and do any good at them. Are you going to be able to say have you lost sleep? Have you taken medication? Have you gotten a divorce? Have you had to change jobs? There are so many subjective things, and there's so many factors unrelated to employment that cause our psychological problems, that there's no way you can say on a classwide basis every plaintiff or every member of the class or every person who has ever worked there who happens to have ... Mexican background, has sustained "X" number of dollars of damages. There is no way you can

---

**3.** The court is not required to include in its findings a discussion of the subject matters detailed in Rule 23(b)(3)(A)–(D), in either granting or denying class action treatment, "so long as

they do not on the record negate the basic finding of the trial court." *Wilcox v. Commerce Bank,* 474 F.2d at 345.

do that because it is too subjective in nature.

Transcript of Hearing, at 76, 86.

Plaintiffs have simply not convinced the court that a survey such as that proposed would succeed in identifying those psychological problems proximately caused by a hostile work environment at IBP, and those caused by a variety of other, unrelated factors. The court is not convinced, as plaintiffs suggest, that it would merely require "a punch of the button to start dividing up dollars and sending them out." Transcript of Hearing, at 46. Nor is the court convinced that sending out a survey to all class members would accurately identify those individuals, if any, who did not suffer damages. Because the differing individual circumstances that exist would unnecessarily complicate this action, a class action would not be a superior method for adjudicating the controversy.

We are not persuaded by the cases cited by plaintiff on this point. In *Long v. Trans World Airlines, Inc.*, 761 F.Supp. 1320 (N.D.Ill.1991), three thousand flight attendants brought suit against their former employer, Trans World Airlines ("TWA"). Plaintiffs alleged that when they were terminated as a result of a strike against TWA, TWA failed to issue preferential hiring rights letters to them until nearly a year later, in violation of the Airline Deregulation Act. Plaintiffs claimed that they lost employment opportunities as a result of TWA's failure to issue such letters. Consequently, the damages plaintiffs sought stemmed from their claimed lost employment opportunities.

The court in *Long* approved the use of a sampling technique, which would allow a classwide determination of damages based on extrapolation from a representative sample. There, however, the court stated that "the class members were all subjected to exactly the same conduct, and the individual issues concerning damages do not predominate." *Id.* at 1327–28. Here, in contrast, we have determined that individual issues do predominate. *See* discussion *infra*, regarding predominance. In addition, in *Long*, the survey questionnaires were designed to elicit information that would determine what the class had lost in the way of wages and benefits, in order to fashion a back pay remedy for the class. The cases relied upon in *Long* in support of the sampling technique involved the use of statistical computations for determining a class-wide back pay award. In short, neither *Long*, nor any of the cases cited therein, approved the use of statistical sampling and extrapolation for the calculation of class-wide compensatory and punitive damages claims such as those alleged by the plaintiffs in the case at bar.

*Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847 (D.Minn.1993), is likewise inapplicable. The plaintiffs in that class action sought only injunctive and declaratory relief, and "financial relief" in the form of reinstatement, back pay, and attorneys' fees; thus the opinion does not address the manageability concerns that arise from the computation of compensatory damages. Plaintiffs' reliance on *Pitre v. Western Elec. Co., Inc.*, 843 F.2d 1262 (10th Cir.1988), and *Stewart v. General Motors Corp.*, 542 F.2d 445 (7th Cir.1976), *cert. denied*, 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977), is misplaced for the same reason: both *Pitre* and *Stewart* approved class-wide, aggregate damage awards for back pay, not compensatory damages.

At the hearing, plaintiffs' counsel referred the court to *In re: Estate of Ferdinand Marcos Human Rights Litigation*, MDL No. 840, 1994 WL 874222 (D.C.Hawaii), and in particular the random sampling method that that court used in calculating compensatory damages for human rights abuses. While the exact posture of the case is somewhat unclear, it appears the parties entered into a stipulation which provided that the Special Master would recommend a damages award based upon extrapolated statistical calculations. The Special Master's Recommendations, which plaintiffs' counsel provided to the court, state that the recommendations "were based upon Philippine law, including its Civil Code as well as its damage case law, international law, and American law." Recommendations at 11. We find this method is of little authority unless IBP would stipulate to the appointment of a Special Master to determine compensatory damages. Under the 1991 Amendments to the Civil Rights Act, IBP is entitled to a jury trial on compen-

satory damages, both under the Title VII and the section 1981 claims. To date, IBP has made no representation to the court that it would be willing to stipulate to the appointment of a Special Master to determine compensatory damages.

In light of the foregoing, the court has grave concerns that the instant suit, if certified as a class, would "disintegrate into a myriad of individual claims," thus making the action unmanageable. *See Gelman v. Westinghouse Elec. Corp.,* 73 F.R.D. 60, 69 (W.D.Penn.1976), *appeal dismissed,* 556 F.2d 699 (3d Cir.1977).

Moreover, though plaintiffs rather glibly discount any concerns regarding the ability to give notice under Rule 23(c)(2) to each of the possibly 7,000 plaintiffs, the court views this as a factor to be considered. Many of the putative plaintiffs do not read or speak English. Even assuming this problem could be cured with a bilingual notice form, other difficulties arise. The proposed plaintiff class includes all past, non-salaried Mexican and Mexican–American workers who worked at IBP's Kansas plants at any time since November 21, 1991. In the last five years, the record reflects that a number of proposed class members have moved back to Mexico: indeed, IBP represents that one of the named plaintiffs has moved back to a remote part of Mexico, where a message must be left at the pay phone in the village, whereupon contact only occurs if he chooses to call back. Transcript of Hearing, at 81. Thus, the court foresees significant difficulties in notifying all members of the class, and attendant problems with due process, to the extent unnotified class members, having no opportunity to opt out, are bound by the judgment of the class.

Finally, although plaintiffs emphasize the oft-quoted passage from *Esplin v. Hirschi* that "if there is to be any error made, let it be in favor and not against the maintenance of the class action," we are not swayed by *Esplin's* edict in this case. Rather, we are influenced by the reasoning of the Tenth Circuit in *Wilcox v. Commerce Bank,* 474 F.2d 336, 344 (10th Cir.1973), wherein the court stated:

But ... [the] doctrine [of *Esplin v. Hirschi* ] should not be extended to limit unreasonably the sound discretion of trial courts in cases such as this, where discretion may be the key to a realistic administration of Rule 23, particularly with respect to a determination of the most fair and efficient procedure.

One of the reasons expressed in *Esplin* for a liberal application of Rule 23 was the retained power of the trial court to later establish sub-classes or even to decertify the class should developments warrant. *Id.* Here, however, we find that developments are not likely to change the situation, and that any considerations or factors which could possibly justify class certification are presently before the court. Moreover, *Esplin* was a securities fraud case involving the purchase of stock, where uniform classwide relief was possible because the investors had highly similar claims and the amount of investor losses resulting from the fraud was easily calculable. Here, in contrast, each potential class member allegedly experienced different, individual, episodes of exposure to a hostile work environment, which involve unique facts, and for which large compensatory damages, including damages for psychological, emotional, and stress-related injuries are claimed.

### Predominance of Common Questions of Law or Fact

In determining whether the predominance standard is met, courts focus on the issue of liability. *Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791, 796 (10th Cir. 1970); *United Telecommunications Sec. Lit.,* 1992 WL 309884, at *3. If the liability issue is common to the class, common questions are held to predominate over individual ones.

As to plaintiffs' allegations concerning their hostile work environment claim pursuant to both 42 U.S.C. § 1981 and Title VII, the court concludes that various individual questions predominate over common issues. As the court stated in *Trent v. Cessna Aircraft Co.,* CIV.A. No. 93–1239–MLB, 1995 WL 101323 (D.Kan. Jan. 20, 1995), in order to establish a hostile work environment claim:

The evidence must satisfy both subjective and objective standards, revealing an environment that the plaintiff actually and reasonably perceived to be hostile and abusive. The court must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.* at \*15 (citations omitted). Without delving into the merits, the court finds that under the facts and circumstances of this case, plaintiffs claims of hostile work environment discrimination are subjective and individualized in nature, and do not lend themselves to class treatment. Each class member's exposure to allegedly discriminatory conduct varies in nature and degree from that of other named plaintiffs and putative class members. *See Boughton v. Cotter,* 65 F.3d 823 (10th Cir.1995). We believe that, if certified, the class action would devolve into a series of individual trials on issues peculiar to each plaintiff, and consequently, common issues do not predominate.

▆▆▆ Additionally, we find that the damages plaintiffs are seeking militate against class treatment. "[I]f the computation of damages following a ruling in favor of the class is a largely mechanical task, then 'the existence of individualized claims for damages seems to offer no barrier to class certification ...'" *Smith,* 124 F.R.D. at 677 (citing *Windham v. American Brands, Inc.,* 565 F.2d 59, 68 (4th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978)). "However, if the computation of damages will require separate 'mini-trials,' then the individualized damages determination predominates over common issues, and a class should not be certified." *Id.* (citing *Windham,* 565 F.2d at 68).

In the instant case, we conclude that should IBP be found liable on the hostile work environment claim, each individual plaintiff would need to present evidence regarding his or her claim of compensatory damages, as discussed more fully *supra.* Plaintiffs' claims are highly individualistic, inasmuch as the precise relief which this court would grant to each successful plaintiff depends upon a number of factors and characteristics specific to each particular plaintiff. *See Gray v. Int'l Bhd. of Electrical Workers,* 73 F.R.D. 638, 641 (D.D.C.1977). Consequently, the damages computation would require separate "mini-trials," where individual damages determinations would predominate over common issues.

▆▆▆ In sum, the court finds that on balance, individual questions predominate over common issues, and any advantages of a class action are outweighed by significant problems of case manageability. Accordingly, plaintiffs' motion to certify a class consisting of all past, current, and future hourly, non-salaried workers of Mexican ethnicity or ancestry (including Mexicans and Mexican–Americans), who have or will have worked at IBP, Inc.'s Finney County, Kansas, or Emporia, Kansas, beef processing plants at any time since November 21, 1991, and who have or will have been subjected to a hostile or abusive work environment because of their ethnicity or ancestry is denied.

### B. *The "Initial Job Assignment" Class*

With respect to the second proposed class, plaintiffs' counsel stated at the hearing that plaintiffs are relying exclusively on statistics and the expert testimony of statistician Martin Shapiro to prove their claims, not on plaintiffs' affidavits or depositions describing anecdotal evidence of discrimination. Plaintiffs' theory of discrimination based on initial job assignment is that statistical analysis of the Emporia and Finney County plants reveals a Departmental and Divisional segregation of Mexican and Mexican–American workers. More specifically, plaintiffs contend that Mexican and Mexican–American workers at IBP are assigned to the "least desirable" and most injury prone jobs, in numbers which are statistically disproportionate to the percentage of Mexican and Mexican–Americans in the labor pools of those plants. Plaintiffs claim that the proposed class members have been discriminated against on both a Divisional level, and a Departmental level. As to the Division level discrimination, plaintiffs maintain that Mexicans and Mexican–Americans are dis-

proportionately assigned to the Slaughter Division over the Processing Division. Plaintiffs also claim that discrimination exists within each Division at the Departmental level and job level, inasmuch as putative class members are disproportionately assigned to the worst departments and jobs within each Division.

■■■ As a threshold matter, IBP contends that the class of plaintiffs alleging a claim of discrimination in initial job assignments based upon national origin does not state a claim that is "fairly encompassed" by Sigala's EEOC charge. Once again, courts may only exercise jurisdiction over claims encompassed within the EEOC charge, and like or related matters that might reasonably be expected to be subject to EEOC investigation growing out of the charge. *Drummer v. DCI Contracting Corp.*, 772 F.Supp. 821, 827 (S.D.N.Y.1991).

■■■ In examining the specific EEOC charge of discrimination alleged by Sigala (that he was called a "lazy Mexican" and a "wet back"), we do not discern that an EEOC investigation arising from charges of name-calling could reasonably be expected to include discrimination based on initial job assignments. "[T]he purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466. We do not believe, under the EEOC charge as filed, that the EEOC was given the opportunity to carry out its purpose of obtaining voluntary compliance with respect to the plaintiff class' claim of discrimination based on initial job assignment. Indeed, plaintiffs did not even propose a class of plaintiffs discriminated against, based upon initial job assignment, until 1995, long after Sigala filed his EEOC complaint in November 1992. Thus, we conclude that Sigala's charge does not fairly encompass the class claim brought pursuant to Title VII.

Assuming plaintiffs have a claim under 42 U.S.C. § 1981, our discussion, with respect to the first purported class, for the most part applies equally to the second proposed class.

1. *Rule 23(a) Requirements*

*Numerosity and the Impracticability of Joinder*

Plaintiffs represent that the job assignment class "contains a very large percentage of" the employees who make up the hostile work environment class. We observe that the foregoing discussion regarding numerosity, *supra,* also applies to the plaintiffs' second proposed class, and will not be repeated here. Suffice it to say that we find the size of plaintiffs' proposed job assignment class, to-wit, a "very large percentage of" 5,000 to 7,000 employees, satisfies the numerosity requirement. In addition, we find that joinder of all the proposed class members would be impracticable. Thus, plaintiffs have met the numerosity requirement.

*Commonality*

In addition, IBP argues, as it did with respect to the class alleging hostile work environment discrimination, that most of the representative plaintiffs were hired before November 21, 1991. Therefore, any discrimination with respect to initial job assignment that occurred between their hire date and November 21, 1991, is not encompassed by section 1981. IBP notes that all named plaintiffs were assigned to slaughter before November 21, 1991.

■■■ Plaintiffs respond that their claims are actionable under section 1981 as the statute existed prior to the 1991 amendments, because plaintiffs were *initially* assigned to the most dangerous, least desirable jobs, "which renders their *initial* contract of employment illegal." Plaintiff's Reply Brief, at 7–8. We believe that the record supports a finding that the initial job assignment was made pursuant to the initial contract. Thus, with respect to plaintiffs' claim of initial job assignment discrimination under section 1981, we find that the named plaintiffs' claims are common to the putative class.

*Typicality and Adequacy of Representation*

■ The typicality requirement is closely related to the adequacy of representation requirement. 1 *Newberg on Class Actions* § 3.13, at 3–72. To fulfill the adequacy of representation requirement, the representative parties must adequately protect the interests of the class members. *Id.* While typicality of claims seeks to assure that the interests of the representative are aligned with the common questions affecting the class, the adequate representation criterion tests this alignment of interests in asking: Does the representative have any kind of a material conflict of interest with the class with respect to the common questions involved? *Id.* at 3–73.

Of the fourteen named plaintiffs, three represent the claims of the initial job assignment class members. Of those three, two were initially assigned to Processing, and only one, Francisco Ponce, was initially assigned to Slaughter. The record reveals that in 1988, Ponce applied for a "sticker" job in the Slaughter Division at IBP. He returned to Mexico because of an emergency in 1989. In October 1991, Ponce reapplied for a job with IBP, and requested the position of "pattern marker" in the Slaughter Division.

■ IBP contends that because Ponce, the one class representative who was assigned to Slaughter, was placed there at his own request, he cannot be an adequate representative for those individuals who did not choose to be assigned to Slaughter. We agree, and find that plaintiffs have not demonstrated that Ponce can "fairly and adequately protect the interests of the class." The fact that Ponce expressly requested placement in the Slaughter Division appears to create an inherent conflict of interest with the putative class members who are claiming they were discriminated against by assignment to jobs in Slaughter. *See* 1 *Newberg on Class Actions* § 3.23, at 3–132 ("[l]ack of conflict remains the most direct approach for determining whether a plaintiff is an adequate representative for the class.").

As with the first proposed class, we have engaged in a "rigorous analysis" and find that plaintiffs have not satisfied their strict burden of establishing all four requirements of Rule 23(a) with respect to the second proposed class. Notwithstanding this conclusion, plaintiffs have also failed to demonstrate that the action should be certified under Rule 23(b); therefore, we conclude class certification should be denied.

### 2. *Rule 23(b) Requirements*
#### (a) *Rule 23(b)(2)*

Our previous discussion regarding Rule 23(b)(2) in the context of the first proposed class is also applicable here, and will not be repeated.

#### (b) *Rule 23(b)(3)*
*Superiority*

■ While plaintiffs make a much stronger case under the Rule 23(a) requirements for the job assignment class, still, the court is of the opinion that the real obstacle to certification of such a class lies in the Rule 23(b)(3) superiority requirement. The court finds that the same problems that we identified in the hostile work environment class also are inherent in the initial job assignment class. For example, our foregoing analysis regarding the issues of compensatory damages [4] and notice as to the first class pertain here as well. We therefore incorporate by reference our discussion and analysis of these points. In addition, the calculation of front pay, while a highly individualistic determination in the ordinary case, is significantly compounded in this case. Here, the nature of the purported class, comprised of a fluid work force, (as contrasted to the workforce in *Pitre*) makes the front pay assessment extraordinarily difficult.

We have considered the statistics offered by both plaintiffs and defendant, and conclude that we need not engage in a "battle of

---

4. Plaintiffs, in their amended complaint, seek compensatory damages "including future pecuniary losses, and past and future emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses." Additionally, in their Supplemental Brief at 10, plaintiffs specifically seek compensatory damages for "stress due to discriminatory job assignment."

the experts" at this time. Much of the statistical analysis goes to the merits of the suit, *i.e.*, whether IBP engaged in intentional discrimination by disproportionately assigning Mexicans and Mexican–Americans to certain Divisions, Departments, and jobs. Furthermore, we question whether the statistical evidence plaintiffs offer indicates anything more than national origin disparate impact discrimination.

Even if we were to assume that Martin Shapiro's affidavits and statistical analysis constituted evidence that tended to support class treatment, we find that ample reasons exist to deny certification. More specifically, although plaintiffs assert that: "Dr. Shapiro's affidavit shows ... a class action is particularly appropriate here because the facts are entirely statistical in nature and come straight from IBP's records, requiring little, if any, individual testimony," Plaintiffs' Supplemental Brief, at 8, the court is not persuaded.. As noted *supra*, the compensatory damages plaintiffs are claiming would require significant individualized consideration to each of their claims. Moreover, the other factors, such as manageability, that the court has previously discussed, tilt the balance against certification.

### *Predominance of Common Questions of Law or Fact*

■ As we mentioned previously in our discussion of the first proposed class, the Tenth Circuit has held that it is sufficient for a trial court to deny certification of a class under Rule 23(b)(3), solely upon a finding that a class action would not be a superior method for the litigation to proceed. *Wilcox*, 474 F.2d at 345. Where such a finding is made, it is not necessary for the court to engage in an analysis of whether common issues of fact or law predominate. *Id.* In light of our foregoing determination that, with respect to the second proposed class, a class action is not superior to other available methods of adjudication, we deem it unnecessary to engage in a discussion of this factor.

■ Finally, we note that we have not considered the merits of plaintiffs' claims in deciding the instant motion, but have looked only to the Rule 23 requirements. After thoughtful review of all the relevant considerations, we are convinced that certification under Rule 23(b)(3) should be denied. In the present case, the judicial efficiency and economies of scale that could be achieved by class treatment are more than offset by the numerous individualized issues and manageability problems that would arise upon certification. In short, a class action simply is not the superior method with which to proceed in the instant suit.

IBP's suggestion that the court should dismiss the Title VII claims of four of the named plaintiffs, Velasquez, Ponce, Lira, and Garcia, on the grounds that they cannot maintain an action under Title VII, is not squarely before the court, and therefore will not be addressed at this time.

IT IS THEREFORE ORDERED that plaintiff's motion for class certification as to the first proposed class (Doc. #183) is denied.

IT IS FURTHER ORDERED that plaintiff's motion for class certification as to the second proposed class (Doc. #183) is denied.

IT IS FURTHER ORDERED that this matter is hereby referred to Magistrate Judge Rushfelt for further pretrial proceedings on plaintiffs' individual claims.